******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KACEY LEWIS
(AC 35389)

Beach, Sheldon and Foti, Js.

*Argued November 21, 2013—officially released March 4, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Schuman, J.)

*Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *David A. Gulick*, assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Kacey Lewis, was convicted, after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), interfering with an officer in violation of General Statutes § 53a-167a (a), and possession of narcotics in violation of General Statutes § 21a-279 (a).[1] The defendant now appeals from his conviction of kidnapping in the first degree, claiming that the evidence adduced at trial was insufficient to support that conviction under the rule of *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), because any restraint imposed by him on the victim was merely incidental to the assault. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. Early in the evening of July 20, 2009, the defendant and his girlfriend, Alana Thompson, drove around the streets of Waterbury trying to sell heroin. The defendant eventually parked the car he was driving, his sister's 2008 Nissan Altima, near East Liberty Street and South Main Street, at which time he and Thompson separated. When they parted company, Thompson told the defendant that she was going to try to sell some of his heroin on her own. The two agreed that they would meet back later where he had parked the car.

When Thompson later returned to the car, the defendant was not there. She then walked away and encountered a friend of hers named Anna, who was driving around looking for drugs. Thompson got into Anna's car and called the defendant, who reproached her for not being at their meeting place. Thompson and the defendant again agreed to meet where the defendant had parked his sister's car, but Thompson stayed with Anna, who drove them to her home where they "got high."

Approximately one hour later, Thompson got a ride to her aunt's house on Willow Street. On the way, she listened to several voice mail messages from the defendant, in which he expressed his anger with her. Upon arriving at her aunt's house, Thompson learned that the defendant had stopped by there earlier, looking for her.

After about five or ten minutes at her aunt's house, Thompson left with an acquaintance, Amanda Blouin, who walked with her down Willow Street to the parking lot of the corner store, where they encountered a drug dealer known to them as "Nono." Nono, in turn, walked with them to Hillside Avenue, where they stood on the sidewalk, conversing with one another, until the defendant rapidly drove his sister's car up onto the curb alongside them. The defendant quickly alighted from the car and approached Thompson, who was standing on the passenger side of the car, saying, "Bitch, come

here." In response, Thompson moved away from him, going around the car in the other direction. At some point, the defendant caught up with Thompson and grabbed her by her shirt and hair, punched her in the face, and tried to pull her to the car. She broke free of the defendant's grasp and tried to flee to a nearby store, but the defendant followed her and grabbed her again by her shirt and hair. Thompson attempted to resist the defendant's efforts and dropped to the ground to try to prevent him from getting her to the car. The defendant, however, persisted in his efforts to subdue her, dragging her approximately ten feet back toward the car. When they got back to the car, the defendant maintained his grip of Thompson's hair with one hand, "holding [her] down [so that she] couldn't get up." Then he attempted three times to open the passenger side door of the car with his other hand to force Thompson inside. Each time he did so, Thompson kicked the door shut to prevent the defendant from forcing her into the car. Two plain clothes police officers driving a white sport utility vehicle arrived at the scene, and the defendant let go of Thompson.[2]

Following the defendant's conviction, the court sentenced him to a total effective sentence of twenty-five years incarceration, execution suspended after fifteen years, followed by five years probation. This appeal followed.

The defendant claims that the evidence adduced at trial was insufficient to support his kidnapping conviction. "In reviewing a sufficiency of the evidence claim, we construe the evidence in the light most favorable to sustaining the verdict, and then determine whether from the facts so construed and the inferences reasonably drawn therefrom, the trier of fact reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Bennett*, 307 Conn. 758, 763, 59 A.3d 221 (2013).

Section 53a–92 (a) defines kidnapping in the first degree, in relevant part, as follows: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ." Based upon the language of § 53a–92 (a), the essential elements of kidnapping in the first degree have long been held to be the abduction of another person and the restraint of that person with the intent to inflict physical injury upon him.

In recent years, however, our Supreme Court has

determined that, when a defendant engages in conduct that would otherwise constitute the crime of kidnapping in the first degree in the course of committing another substantive criminal offense, § 53a-92 (a) requires proof of an additional element, to wit: that the defendant "intend[ed] to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State v. Salamon*, supra, 287 Conn. 542. The court explained that "a defendant may be convicted of both kidnapping and another substantive crime [only] if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury. For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Emphasis omitted; footnote omitted.) Id., 547–48.

In this case, the defendant claims that the state failed to present sufficient evidence to support his conviction for kidnapping in the first degree because it failed to prove that he restrained Thompson for a longer period of time or to a greater degree than necessary to commit the separate crime of assault in the third degree against her. Section 53a-61 (a) (1) provides in relevant part: "A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person . . . ." The defendant argues that he is entitled to a judgment of acquittal on the charge of kidnapping in the first degree because the state failed to adduce sufficient evidence to prove beyond a reasonable doubt that he restrained Thompson for any longer or to any extent greater than necessary to intentionally inflict physical injury upon her.

In his brief to this court, the defendant has acknowledged that "it is uncontroverted that the defendant struck Thompson, [and thus that] there is no dispute

concerning his guilt to [the assault] offense." The defendant argues, however, that he committed no "separate offense" at the time of the assault and that he restrained Thompson's movement for only "exceedingly short" periods of time. It is true, of course, as our Supreme Court has recognized, that "there conceivably could be factual situations in which charging a defendant with kidnapping based [on] the most miniscule [movement or duration of confinement] would result in an absurd and unconscionable result . . . ." (Internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 765, 988 A.2d 188 (2010). This case, however, does not involve one of those situations.

Here, the evidence shows that, after the defendant initially punched Thompson in such a manner that the jury reasonably could have found him guilty, on that basis alone, of assault in the third degree, which required only proof that he intentionally caused her pain, and thus physical injury, he then made a prolonged and physically violent effort to restrain her in order to force her into his sister's waiting car. To that end, when Thompson broke free from the defendant after being punched and fled toward a nearby store, he chased after her, grabbed her by her hair and dragged her along the ground to the side of the car, where, while maintaining his grip on her hair and holding her down, he repeatedly attempted to open the door so he could force her inside. The jury reasonably could have construed that conduct as wholly separate from, and not merely incidental to, the preceding assault of which it also convicted him. That evidence, which supported the claim that the defendant intended to prevent Thompson's liberation, also was sufficient to establish that the restraint he imposed upon her exceeded that which was necessary to constitute assault in the third degree. We thus conclude that the evidence was sufficient to support the defendant's kidnapping conviction.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was acquitted of two counts of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1).

[2] Because the defendant challenges only his kidnapping conviction, we need not set forth the facts underlying his other convictions.