******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LEON BELL *v.* COMMISSIONER OF CORRECTION
## (AC 38401)

DiPentima, C. J., and Lavine and Sheldon, Js.

*Syllabus*

The petitioner, who had been convicted of kidnapping in the first degree, robbery in the first degree, burglary in the third degree and larceny in the third degree, sought a writ of habeas corpus. The petitioner had committed separate robberies at two restaurants during which he ordered the victims, employees at each restaurant, to open the restaurants' safes and to enter walk-in refrigerators. The petitioner claimed that he was denied due process when the trial court failed to instruct the jury, in accordance with *State* v. *Salamon* (287 Conn. 509), that he could not be convicted of kidnapping if his confinement or movement of the victims was merely incidental to his commission of the robberies. The trial court did not instruct the jury in accordance with *Salamon*, which had not been decided at the time of the petitioner's criminal trial and direct appeal. The habeas court determined that the petitioner failed to prove that he was denied due process, concluding that the lack of a *Salamon* instruction was harmless because the jury would have found him guilty even if it had been instructed properly pursuant to *Salamon*. The habeas court found that there was overwhelming and uncontested evidence that the petitioner's conduct in ordering the victims to enter the refrigerators was not inherent in or necessary to commit the robberies. The court thereafter rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held* that the habeas court improperly denied the habeas petition, the respondent Commissioner of Correction having failed meet the arduous burden of demonstrating that the omission of an instruction on incidental restraint did not contribute to the verdict: the question of the petitioner's intent when he moved and confined the victims in the refrigerators was contested and was not supported by overwhelming evidence, as a properly instructed jury could have had reasonable doubt as to whether that movement and confinement constituted a continuous, uninterrupted course of conduct related to the robberies or independent criminal acts that established the petitioner's intent to prevent the victims' liberation for a longer period of time and to a greater degree than was necessary for the commission of the robberies; moreover, the petitioner's criminal conduct occurred at a single location, and the robbery and confinement were not separated by a significant time period or distance, which made it difficult to determine if the confinement of the victims had independent criminal significance, a properly instructed jury would not have concluded necessarily that the robberies were completed prior to the movement and confinement of the victims, but could have determined that the movement and confinement occurred during a continuous sequence of events that was related to the taking of money from the safes and was not a separate criminal offense, and the significance of those factors outweighed the significance of those that supported the respondent's claim of harmless error; accordingly, this court could not conclude that the absence of a *Salamon* instruction amounted to harmless error in the present case.

(*One judge dissenting*)

Argued October 24, 2017—officially released August 7, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; thereafter, the petition was withdrawn in part; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed; judgment directed; further proceedings.*

*David B. Rozwaski*, assigned counsel, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Tamara A. Grosso*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Leon Bell, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] The habeas court denied the petition after concluding that, although the petitioner was entitled to a jury instruction in accordance with the seminal case of *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), that failure was harmless beyond a reasonable doubt. The dispositive issue in this appeal is whether the habeas court correctly concluded that the absence of a *Salamon* instruction in the petitioner's criminal trial was harmless beyond a reasonable doubt. In a separate opinion, which we also release today; see *Banks* v. *Commissioner of Correction*, 184 Conn. App. 101,     A.3d     (2018); we considered the same legal claim under similar facts. In *Banks*, we concluded that, under the facts of that case, the respondent, the Commissioner of Correction, failed to meet his burden to prove that the absence of the *Salamon* instruction was harmless beyond a reasonable doubt and therefore the habeas court in that case improperly denied the habeas petition. Id., 132. Our analysis and conclusion in *Banks* controls the resolution of the present case. Accordingly, we reverse the judgment of the habeas court and remand the case with direction to grant the petition for a writ of habeas corpus and to proceed with a new trial on the kidnapping charges.

The following facts and procedural history are relevant. After a jury trial, the petitioner was convicted of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), two counts of burglary in the third degree in violation of General Statutes § 53a-103 (a), two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), and two counts of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2). See *State* v. *Bell*, 93 Conn. App. 650, 652, 981 A.2d 9, cert. denied, 277 Conn. 933, 896 A.2d 101 (2006). Following the petitioner's convictions, the court, *Mullarkey, J.*, sentenced the petitioner to a total effective sentence of thirty-six years incarceration.

The criminal charges stemmed from two separate incidents occurring at Friendly's restaurants, one in Manchester on April 12, 2001, and the other in Glastonbury on April 14, 2001, during which the petitioner instructed the respective victims, employees of Friendly's, to enter walk-in refrigerators after ordering them to open the restaurants' safes. See id., 652–53. The state charged the petitioner in two separate long form informations, which the court consolidated for trial; see id., 654; each information alleged one count each of robbery in the first degree, burglary in the third degree, kidnapping in the first degree, and larceny in the third degree. Both kidnapping charges alleged in relevant part that

the petitioner had violated § 53a-92 (a) (2) (B) when he "abducted another person and restrained the person abducted with the intent to accomplish and advance the commission of a felony (to wit: a robbery)."

After this court affirmed the petitioner's convictions on direct appeal and prior to the final determination of his first habeas petition,[2] the law fundamentally changed with regard to kidnapping offenses when our Supreme Court decided *State* v. *Salamon*, supra, 287 Conn. 509, and *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011). See, e.g., *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 66–69, 136 A.3d 596 (2016) (describing shift in interpretation of kidnapping statutes). "Pursuant to the holdings of these decisions, a [petitioner] who has been convicted of kidnapping may collaterally attack his kidnapping conviction on the ground that the trial court's jury instructions failed to require that the jury find that the [petitioner's] confinement or movement of the victim was not merely incidental to the [petitioner's] commission of some other crime or crimes." *Wilcox* v. *Commissioner of Correction*, 162 Conn. App. 730, 736, 129 A.3d 796 (2016); see also *Hinds* v. *Commissioner of Correction*, supra, 69 (as matter of state common law, policy considerations weighed in favor of retroactive application of *Salamon* to collateral attacks on judgments rendered final prior to release of *Salamon* decision).

The petitioner, self-represented at the time, commenced a second habeas action on June 8, 2012, which he later amended after being appointed counsel (operative petition). Among other allegations, he claimed that his two kidnapping convictions were invalid because the trial court had not instructed the jury in accordance with *Salamon* and *Luurtsema*.[3] The respondent filed a return on January 23, 2015, denying the material allegations of the operative petition. A one day habeas trial took place on January 28, 2015. At that proceeding, the habeas court admitted into evidence the transcripts from the petitioner's criminal trial.

The habeas court, *Oliver, J.*, issued its memorandum of decision on August 12, 2015. Although the operative petition contained three counts; see footnote 1 of this opinion; the court noted that "[t]he gravamen of the petitioner's claims is that his criminal jury was not properly instructed on the kidnapping charge[s] and that he, pursuant to . . . *State* v. *Salamon*, [supra, 287 Conn. 509], is entitled to have a properly instructed jury decide the kidnapping charge[s]." After determining that the petitioner's due process claim—count three—rested "[a]t the heart of all counts," the court noted that, as alleged, the petitioner's failure to prove count three would dispose of his additional claims. The court therefore first addressed count three.

The court concluded that the petitioner failed to prove that he was denied due process.[4] Although it

determined that the jury should have been instructed in accordance with *Salamon*, the court concluded that the lack of such an instruction was harmless. With respect to assessing harm, the court considered whether, "in examining the entire record, this court [was] satisfied beyond a reasonable doubt that the omitted nonincidental restraint element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same if the jury had been so instructed." The court stated that the record "clearly demonstrate[d] the overwhelming and uncontested evidence of nonincidental restraint of the two victims." More specifically, it concluded that ordering both victims of the Manchester and Glastonbury robberies to enter walk-in refrigerators was "not necessary to commit the [robberies]. Any [such] restraint was not inherent in the [robberies] . . . and helped prevent the victim[s] from summoning assistance, thereby reducing the risk of the petitioner being detected." Accordingly, the court concluded, "beyond a reasonable doubt," that the jury would have found the petitioner guilty of two counts of kidnapping even if the jurors had been instructed properly pursuant to *Salamon*.

Due to the petitioner's failure to prove his due process claim, the court denied the petition for a writ of habeas corpus. Following that denial, the habeas court granted his petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

We begin with our standard of review. "In our review of the issues raised, we are mindful that, while [t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous . . . [q]uestions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 65. "The applicability of *Salamon* and whether the trial court's failure to give a *Salamon* instruction was harmless error are issues of law over which our review is plenary." *Farmer* v. *Commissioner of Correction*, 165 Conn. App. 455, 459, 139 A.3d 767, cert. denied, 323 Conn. 905, 150 A.3d 685 (2016); see also *Hinds* v. *Commissioner of Correction*, supra, 60, 65; *Nogueira* v. *Commissioner of Correction*, 168 Conn. App. 803, 814, 149 A.3d 983, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

The petitioner claims that the habeas court improperly concluded that he was not deprived of due process when the jury found him guilty of kidnapping in the first degree without being instructed pursuant to *Salamon*. According to the petitioner, placing both victims in walk-in refrigerators was "clearly incidental" to, and was part of the "continuous activity" of, robbing the Friendly's restaurants. Therefore, the petitioner argues that the habeas court improperly concluded that the lack of *Salamon* instructions was harmless beyond a

reasonable doubt.[5]

In response, the respondent argues that the failure to give a *Salamon* instruction was "harmless under any applicable standard."[6] According to the respondent, the robberies occurred before the petitioner forced both victims into the walk-in refrigerators.[7] Because of this, the respondent maintains that confining the victims in the walk-in refrigerators was not necessary to commit the robberies, nor was it the type of incidental restraint contemplated by *Salamon*. Simply put, the respondent contends that confining the victims in the walk-in refrigerators had independent legal significance, and "establish[ed] [the petitioner's] intent to prevent the victims' liberation for a longer period of time and to a greater degree than was necessary for the commission of the robberies."

The issue presented herein is not whether there was sufficient evidence to convict the petitioner of both kidnapping and robbery. *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 103; see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 91. Similarly, it is not whether a reasonable probability exists that a jury, properly instructed in accordance with *Salamon*, would reach a different result. *Banks* v. *Commissioner of Correction*, supra, 103. Instead, the respondent bears the "arduous burden of demonstrating that the omission of an instruction on incidental restraint did not contribute to the verdict." Id. We conclude that this burden has not been met, and, therefore, we reverse the judgment of the habeas court.[8]

We recite, in some detail, the underlying facts surrounding the Manchester and Glastonbury robberies, which the jury reasonably could have found, as part of our analysis. See *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 814–15; see also *State* v. *Bell*, supra, 93 Conn. App. 652–54. At approximately 1 a.m. on April 12, 2001, Cheryl Royer was the last employee to leave the Friendly's restaurant in Manchester. As she was exiting the restaurant, the petitioner approached her, stated that he had a gun, and ordered her to "get back inside" and to "give him the money." Once Royer informed the petitioner that she did not have any money, the petitioner told her "to get the money from the safe." The petitioner and Royer entered the restaurant together and walked to the manager's office, the location of the safe. Royer then opened the safe at the petitioner's direction and "was told to sit in the chair in the corner and turn away." After approximately "[a] minute" or "[a] matter of minutes" sitting in the chair, the petitioner told Royer "to go into the walk-in refrigerator." The walk-in refrigerator was approximately fifteen feet down the hall from the manager's office, and, after the petitioner finished looting the safe, he ordered Royer to proceed into the refrigerator. Once she entered the refrigerator, and after the

refrigerator door shut behind her, the petitioner told her "to stay in there for fifteen minutes."[9] Royer smoked part of a cigarette, and, after a few minutes, she left the refrigerator and ran into the office to call the police. The petitioner was not in the restaurant when Royer exited the refrigerator.

Two days later, on April 14, 2001, at approximately 6 a.m., Tricia Smith was the first employee to arrive for the opening shift at the Friendly's restaurant in Glastonbury. As she entered the restaurant, the petitioner approached her from behind and "told [her] to turn off the alarm." Smith testified: "He told me—he asked me where the safe was, I told him it was in the back dish room, [and] he told me to go back and open it." Smith did not see a gun, but the petitioner had something underneath his jacket that looked like one. Smith led the petitioner to the safe and, after opening it, "[the petitioner] told [her] to go into the walk-in cooler. So [she] unlocked it and got in." The walk-in refrigerator was ten feet away from the safe, and the petitioner ordered Smith into the refrigerator "[j]ust two [or] three minutes" after she first saw him. Once she was inside the refrigerator, the petitioner told her that "he would let [her] know when he was finished" and when it was safe to come out. Approximately two minutes after entering the refrigerator, Smith heard the petitioner say something that she could not make out. "[She] then waited a few more minutes after that" before she peeked out of the refrigerator to see if the petitioner had left the restaurant. Seeing that the petitioner had left, she exited the refrigerator and ran to the nearby gas station for help.

Finally, although the petitioner did not testify at trial, his statement to the police was read into the record and became a full exhibit. In that statement, he confessed to both robberies. With respect to the Manchester robbery involving Royer, his statement provided in relevant part: "Once we were in the back room, [Royer] opened the safe. After she opened the safe, I asked her which one— which one is the walk-in refrigerator. She pointed to one, and I asked her to step in there for a minute and I'll come back and get you when I'm through. I then took the money out of the safe. . . . After I got the money, I left. The manager was still in the refrigerator when I left." With respect to the Glastonbury robbery involving Smith, the petitioner's statement provided in relevant part: "The only other robbery I did was the one in Glastonbury this morning, [April 14, 2001]. . . . I told [Smith] to open the safe. . . . After she opened the safe I told her to get in the refrigerator. After I got the money from the safe, I left."

We now turn to the legal principles governing whether an omitted jury instruction constitutes harmless error. It is undisputed that the trial court did not provide an incidental restraint instruction in accor-

dance with *Salamon*. "[I]t is well established that a defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . A jury instruction that improperly omits an essential element from the charge constitutes harmless error [only] if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . . The failure to charge in accordance with *Salamon* is viewed as an omission of an essential element . . . and thus gives rise to constitutional error." (Citation omitted; internal quotation marks omitted.) *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 77–78; see also *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 770; *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 427–28, 154 A.3d 1054 (2017); *Nogueira* v. *Commissioner of Correction*, supra, 168 Conn. App. 812–13; see generally *State* v. *Fields*, 302 Conn. 236, 245–46, 24 A.3d 1243 (2011) (on direct appeal, jury instruction that omits essential element from charge constitutes harmless error only if reviewing court concluded, beyond reasonable doubt, that omitted element was uncontested and supported by overwhelming evidence such that jury verdict would have been same absent error); *State* v. *Flores*, 301 Conn. 77, 83, 17 A.3d 1025 (2011) (on direct appeal, test for determining whether there is constitutional error in jury instruction is whether it appears beyond reasonable doubt that error complained of did not contribute to verdict).

"[W]e underscore that a determination of sufficient evidence to support a kidnapping conviction is *not* the appropriate yardstick by which to assess the likelihood of a different result [and that the burden of proving harmlessness rests with the respondent]." (Emphasis added.) *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 91; see id., 78. Similarly, the appropriate test is not whether a properly instructed jury likely would have found the petitioner guilty of kidnapping. Id., 85; see also *State* v. *Flores*, supra, 301 Conn. 87.

"To answer the question of whether the absence of the *Salamon* standard constituted harmless error requires us to examine the factors and principles enunciated in that case. . . . [A] *defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accom-*

*plish or complete the other crime. . . .* We iterate that to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. . . .

"The *Salamon* court set forth a list of factors [f]or purposes of making [the] determination [of whether a criminal defendant's movement or confinement of a victim was necessary or incidental to the commission of another crime; specifically] the jury should be instructed to consider the various relevant factors, including [1] the nature and duration of the victim's movement or confinement by the defendant, [2] whether that movement or confinement occurred during the commission of the separate offense, [3] whether the restraint was inherent in the nature of the separate offense, [4] whether the restraint prevented the victim from summoning assistance, [5] whether the restraint reduced the defendant's risk of detection and [6] whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 114–15; see also *State* v. *Flores*, supra, 301 Conn. 84–85.

At this point, a discussion of *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 101, facilitates our analysis. In that case, the petitioner, Mark Banks, was convicted in 1997 of four counts of kidnapping in the first degree, four counts of robbery in the first degree and two counts of criminal possession of a pistol or revolver. Id., 104. His convictions stemmed from the events at two Bedding Barn stores in Newington and Southington. Id., 105–106. On August 30, 1995, Banks, posing as a customer, entered the Newington store shortly before closing time. Id., 105. After briefly speaking to one employee, Banks pulled a silver handgun from his bag and directed the employee to open the cash register. Id. After taking money, Banks moved the employee and his coworker to a nearby bathroom. Id. Banks propped a mop handle against the door to keep the employees in the bathroom. Id. After a brief time, the employees exited the bathroom and called the police. Id.

On the evening of September 13, 1995, Banks, along with an unknown woman, went to the Southington store where he again posed as a customer and held up a store employee and her friend at gunpoint. Id., 105–106. After taking money from the cash register and a bank bag, the petitioner ordered the two women to lock themselves in the bathroom, which they did. Id., 106. Shortly thereafter, the two women exited the bathroom and called the police. Id.

Following his conviction and unsuccessful direct appeal, Banks filed a petition for a writ of habeas corpus in which he challenged his kidnapping convictions on the ground that the jury in his criminal trial had not received a *Salamon* instruction. Id. In that case, the habeas court accepted the respondent's concession that Banks had been entitled to a *Salamon* instruction. Id., 106 n.5. "The habeas court concluded that the respondent demonstrated that the absence of a *Salamon* instruction at [Banks'] criminal trial constituted harmless error because the movements and confinements [of the victims] were perpetrated *after* the crimes of robbery were committed and cannot conceivably be regarded as coincidental with or necessary to complete the substantive crimes of robbery. Depriving someone of their freedom of movement by imprisoning them in a bathroom subsequent to acquiring their money, although convenient for the robber, is not inherent in the crime of robbery. It is crystal clear that [Banks'] intent and purpose for locking up his robbery victims was to postpone their summoning of assistance and reporting of the crime to police, thus facilitating [Banks'] escape from the scene and delaying detection of his crime, identity, and/or whereabouts. Also, [Banks] extended the period of infliction of duress and distress for the victims by restraining them beyond the time of fulfillment of his quest, i.e., seizure of cash." (Emphasis in original; internal quotation marks omitted.) Id., 107–108.

Banks appealed from the decision of the habeas court, claiming that it improperly had concluded that the absence of the *Salamon* instruction was harmless error. Id., 104. Specifically, he argued that "it would have been reasonable for jurors to conclude that the brief restraint that occurred during the commission of the robbery was incidental to the robbery, and therefore, was not a kidnapping. Because [Banks] was deprived of the opportunity of having the jurors consider this issue, which was susceptible to more than one interpretation, the respondent did not prove the error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 114. Ultimately, we agreed with Banks and reversed the judgment of the habeas court. Id., 132.

In both *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 101, and *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 430–32, we began our analysis with the first *Salamon* factor, that is, the nature and duration of the victims' movement or confinement by the perpetrator. Specifically, we observed: "[I]n *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93, our Supreme Court attempted to categorize various *Salamon* incidental restraint cases with differing degrees of confinement or movement: Although no minimum period of restraint or degree of

movement is necessary for the crime of kidnapping, an important facet of cases where the trial court has failed to give a *Salamon* instruction and that impropriety on appellate review has been deemed harmless error is that longer periods of restraint or greater degrees of movement demarcate separate offenses. See *State* v. *Hampton*, [293 Conn. 435, 463–64, 988 A.2d 167 (2009)] (defendant confined victim in a car and drove her around for approximately three hours before committing sexual assault and attempted murder); *State* v. *Jordan*, [129 Conn. App. 215, 222–23, 19 A.3d 241] (evidence showed the defendant restrained the victims to a greater degree than necessary to commit the assaults even though assaultive behavior spanned entire forty-five minute duration of victims' confinement) [cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011)]; *State* v. *Strong*, [122 Conn. App. 131, 143, 999 A.2d 765] (defendant's prolonged restraint of victim while driving for more than one hour from one town to another not merely incidental to threats made prior to the restraint) [cert. denied, 298 Conn. 907, 3 A.3d 73 (2010)]; and *State* v. *Nelson*, [118 Conn. App. 831, 860–62, 986 A.2d 311] (harmless error when defendant completed assault and then for several hours drove victim to several locations) [cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010)]. *Thus, as these cases demonstrate, multiple offenses are more readily distinguishable—and, consequently, more likely to render the absence of a Salamon instruction harmless—when the offenses are separated by greater time spans, or by more movement or restriction of movement.*

"*Conversely, multiple offenses occurring in a much shorter or more compressed time span make the same determination more difficult and, therefore, more likely to necessitate submission to a jury for it to make its factual determinations regarding whether the restraint is merely incidental to another, separate crime.* In those scenarios, [in which] kidnapping and multiple offenses occur closer in time to one another, it becomes more difficult to distinguish the confinement or restraint associated with the kidnapping from another substantive crime. The failure to give a proper *Salamon* instruction in those scenarios is more likely to result in harmful error precisely because of the difficulty in determining whether each crime has independent criminal significance. See *State* v. *Thompson*, [118 Conn. App. 140, 162, 983 A.2d 20 (2009)] (within fifteen minutes defendant entered victim's car, pushed her behind a building and sexually assaulted her) [cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010)]; *State* v. *Flores*, [supra, 301 Conn. 89] (defendant's robbery of victim in her bedroom lasted between five and twenty minutes); *State* v. *Gary*, [120 Conn. App. 592, 611, 992 A.2d 1178] (defendant convicted of multiple sexual assaults and an attempted sexual assault that were in close temporal proximity to the defendant's restraint of

the victim; thus court determined evidence reasonably supports a finding that the restraint merely was incidental to the commission of other crimes, namely, sexual assaults and attempted sexual assault; lack of *Salamon* instruction harmful error) [cert. denied, 297 Conn. 910, 995 A.2d 637 (2010)]. . . . [S]ee generally *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. App. 743 (review of appellate decisions reveals that absence of *Salamon* instruction is generally more prejudicial where kidnapping related actions were closely aligned in time, place and manner to other criminal acts and these factors are particularly crucial)." (Emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 116–18.

The minimal movement and confinement of Royer and Smith are very similar to those of the victims in *Banks*. With respect to the Manchester incident in this case, the petitioner approached Royer as she was leaving the restaurant and, after indicating that he had a gun, ordered her back inside. The petitioner and Royer walked to the location of the safe inside, where he directed her to open it. After taking the money from the safe, the petitioner moved Royer to a walk-in refrigerator, where she was confined for a few minutes.

The criminal activity at the Glastonbury restaurant bears a marked resemblance to that at the Manchester location, albeit occurring in the early morning as opposed to after closing time. The petitioner approached Smith as she opened the doors of the restaurant. Intimating that he possessed a gun, the petitioner went inside with Smith, and the two immediately went to the restaurant's safe. The petitioner forced Smith to open the safe, and then moved her to, and confined her in, the walk-in refrigerator. Thus, the movements of Royer and Smith were limited to the area within the Friendly's, and the confinement occurred virtually contemporaneously with the taking of the money.

We iterate that, in each instance, the petitioner's criminal conduct occurred at a single location, and the robbery and confinement were not separated by a significant time period or distance. Therefore, it is difficult to determine whether the conduct in placing the restaurant employees into the walk-in refrigerators had independent criminal significance. In other words, "[g]iven the close temporal proximity to the alleged kidnapping and [the fact that] any confinement/movement was limited in nature and distance"; (internal quotation marks omitted); and for the reasons set forth in *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 119, we conclude that this factor weighs in favor of the petitioner.

We next consider the second *Salamon* factor, that is, whether the confinement or movement of the restaurant

employees occurred during the commission of the robberies. Id., 120. The habeas court's decision suggests, and the respondent explicitly argues in his appellate brief, that the robberies in both Manchester and Glastonbury had been completed prior to the petitioner's movement of Royer and Smith to the walk-in refrigerator. The respondent's view is that the movement to and confinement in the walk-in refrigerator constituted a separate offense that took place after a completed robbery. In *Banks*, we specifically rejected this argument, noting that the crime of robbery may continue after the taking of property. Id., 122. Accordingly, we disagree with the habeas court's conclusion that "[a]ny restraint was not inherent in the robbery itself . . . ." A properly instructed jury could have determined that the movement and confinement of Royer and Smith to the walk-in refrigerators occurred during the continuous sequence of events relating to the taking of the money. See id., 128. In other words, these actions of the petitioner constituted part of the course of events of the robbery, and not a separate criminal offense. See id., 124–25; see also *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 433–34. We conclude, therefore, that the second *Salamon* factor supports the petitioner.

The third *Salamon* factor, which is whether the restraint was inherent in the nature of the robbery, also supports the petitioner. We iterate that the jury would not have concluded necessarily that the robberies were completed prior to the movement and confinement of Royer and Smith. Thus, without a *Salamon* instruction, a jury could have found the petitioner guilty of kidnapping even if it concluded that restraint of these two employees was incidental to the robbery. See *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 129; see also *State* v. *Fields*, supra, 302 Conn. 252; *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 435–37.[10] Accordingly, we conclude that the third *Salamon* factor weighs in favor of the petitioner.

We note that the remaining *Salamon* factors provide the petitioner little, if any, support for his claim that the absence of a *Salamon* instruction was not harmless. See *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 129. Our reasoning in *Banks* regarding consideration of all the *Salamon* factors applies to the present case. "[T]he significance of the *Salamon* factors that do weigh in favor of the petitioner, namely, the nature and duration of the movement and confinement of the employees, whether such confinement occurred during the commission of the robbery and whether the restraint was inherent in the nature of the robbery, outweighs the significance of those that support the respondent's claim of harmless error. See *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 437–38 (certain *Salamon* factors cut in favor of respondent, but did not trump significance of others that weighed in favor of petitioner) . . . ." (Citation omitted.) *Banks*

v. *Commissioner of Correction*, supra, 130.[11]

We are cognizant of the respondent's somewhat Sisyphean[12] position in cases where the state had obtained a valid kidnapping conviction years prior to our Supreme Court's decisions in *State* v. *Salamon*, supra, 287 Conn. 509, *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740, and *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56, as well as a growing number of appellate cases applying and interpreting these precedents, only to later have that conviction overturned. Nevertheless, given these developments, and the fact that the petitioner in the present case was entitled to a *Salamon* instruction at his criminal trial, the respondent shoulders the burden to prove that the absence of that instruction was harmless beyond a reasonable doubt. After a review of the facts and controlling case law, we conclude that he has not met this burden because the question of the petitioner's intent when moving and confining Royer and Smith was contested and not supported by overwhelming evidence.

A properly instructed jury could have had reasonable doubt as to whether the petitioner moved and confined Royer and Smith in the walk-in refrigerators in furtherance of the robberies at the Manchester and Glastonbury Friendly's restaurants on April 12, 2001, and April 14, 2001, respectively. See, e.g., *State* v. *Flores*, supra, 301 Conn. 87 (test is not whether jury would return a guilty verdict if properly instructed, but rather whether it was reasonably possible that jury, instructed in accordance with *Salamon*, might find petitioner's conduct constituted robbery but did not rise to level of kidnapping). The minimal movement and confinement of the two employees after the taking of the money from the safes, coupled with the uncertainty as to whether the movement and confinement of Royer and Smith in the walk-in refrigerators was a continuous, uninterrupted course of conduct related to the robbery or an independent criminal act, precludes a conclusion that the respondent met his burden in the present case. See *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 132 (citing *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 92–93, and *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. App. 743). Accordingly, we cannot conclude that the absence of the *Salamon* instruction amounts to harmless error in the present case. The petitioner is entitled to the reversal of his kidnapping convictions and a remand for a new trial on those charges. *Banks* v. *Commissioner of Correction*, supra, 132; see also *State* v. *DeJesus*, 288 Conn. 418, 434–39, 953 A.2d 45 (2008).

The judgment of the habeas court is reversed and the case is remanded with direction to render judgment granting the petition for a writ of habeas corpus, vacating the petitioner's convictions under § 53a-92 (a) (2) (B) and ordering a new trial on those offenses.

In this opinion SHELDON, J., concurred.

[1] Although the operative petition for a writ of habeas corpus contained three counts alleging various grounds for a new trial, the petitioner argues only that the habeas court improperly rejected his due process claim regarding the absence of an incidental restraint instruction in accordance with *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). His other claims are not at issue in this appeal.

[2] In his first habeas action, the petitioner alleged ineffective assistance of counsel. The habeas court, *Fuger, J.*, denied that petition. We dismissed the petitioner's appeal from the judgment of the habeas court in that case. See *Bell* v. *Commissioner of Correction*, 131 Conn. App. 904, 27 A.3d 115, cert. denied, 302 Conn. 949, 31 A.3d 383 (2011).

[3] The petitioner alleged that he had been deprived of due process because "at the time of his conviction[s], the kidnapping statute was invalid and unconstitutional." Due to the petitioner's reliance on *State* v. *Salamon*, supra, 287 Conn. 509, *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740, and *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), and superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 579, 969 A.2d 710 (2009), however, the habeas court construed his claim as one based on a failure to properly instruct the jury. On appeal, the petitioner does not argue that the habeas court improperly construed any of his claims.

[4] The respondent did not plead procedural default, but the court granted without objection an oral motion to amend the return to include a claim of procedural default. Nonetheless, the habeas court addressed the petitioner's due process claim "on the merits because the respondent failed to properly raise procedural default in the return." See, e.g., *Ankerman* v. *Commissioner of Correction*, 104 Conn. App. 649, 654–55, 935 A.2d 208 (2007), cert. denied, 285 Conn. 916, 943 A.2d 474 (2008); see also *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 76 (*Salamon* claim not subject to procedural default).

[5] The petitioner also argues that the habeas court improperly engaged in a harmless error analysis after it concluded that the trial court should have given a *Salamon* instruction. We are unpersuaded by this argument. See, e.g., *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 77–81 (failure to charge jury according to *Salamon* subject to harmless error analysis); *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 427–29, 154 A.3d 1054 (2017) (same); *Farmer* v. *Commissioner of Correction*, supra, 165 Conn. App. 465 (same).

[6] After oral argument, we stayed the present appeal, sua sponte, until the final disposition of *Epps* v. *Commissioner of Correction*, 153 Conn. App. 729, 104 A.3d 760 (2014), appeal dismissed, 327 Conn. 482, 175 A.3d 558 (2018) (certification improvidently granted). "Our Supreme Court granted certification in *Epps* to determine '[w]hether . . . in a collateral proceeding, where the petitioner claims that the trial court erred by omitting an element of the criminal charge in its final instructions to the jury, is harm measured in accordance with *Brecht* v. *Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), or is harm measured in accordance with *Neder* v. *United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)?' " *Epps* v. *Commissioner of Correction*, 323 Conn. 901, 150 A.3d 679 (2016).

Under the *Brecht* standard, reversal of a criminal conviction is warranted when error at the petitioner's underlying criminal trial had a "substantial and injurious effect or influence in determining the jury's verdict." (Internal quotation marks omitted.) *Brecht* v. *Abrahamson*, supra, 507 U.S. 637. Under the *Neder* standard, a petitioner is not entitled to habeas relief if "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder* v. *United States*, supra, 527 U.S. 17.

Our Supreme Court dismissed *Epps* because "[t]he respondent had squarely argued to the habeas court that the petition should be assessed under the harmless beyond a reasonable doubt standard. The respondent never argued in the alternative that a higher standard of harmfulness should apply to collateral proceedings even if the petitioner's claim was not subject to procedural default, despite federal case law applying a higher standard since 1993. *Epps* v. *Commissioner of Correction*, [327 Conn. 482, 485, 175 A.3d 558 (2018)]." (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 113 n.7.

In the present case, the respondent did not argue, either to the habeas

court or to this court, the applicability of the *Brecht* standard. Accordingly, we will employ the harmlessness beyond a reasonable doubt standard as stated in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56, and *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740; see generally *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App. 112–13 n.7.

[7] In response to questions during oral argument before this court, the respondent appeared to posit that a *Salamon* instruction was not required under the circumstances. See, e.g., *Pereira* v. *Commissioner of Correction*, 176 Conn. App. 762, 778, 171 A.3d 105 (*Salamon* instruction not required when restraint forming basis of kidnapping has independent legal significance and is otherwise "sufficiently disconnected" from other crime), cert. denied, 327 Conn. 984, 175 A.3d 43 (2017); *State* v. *Golder*, 127 Conn. App. 181, 191, 14 A.3d 399 (*Salamon* instruction not required where criminal conduct underlying kidnapping charge completed prior to restraint of victim), cert. denied, 301 Conn. 912, 19 A.3d 180 (2011). The respondent did not distinctly raise this argument in his brief. Instead, he argued in his brief that the *lack of* a *Salamon* instruction was "harmless under any applicable standard." Accordingly, we decline to consider the argument that a *Salamon* instruction was not required in the present case.

[8] The dissent argues that the relatively narrow principles set forth in *State* v. *Salamon*, supra, 287 Conn. 509, have undergone a "steady transmogrification" and become more expansive. We do not disagree with the substance of this assessment insofar as our Supreme Court has expanded the principles of *Salamon* to apply retroactively in collateral proceedings on judgments rendered final prior to *Salamon*. See *Wilcox* v. *Commissioner of Correction*, supra, 162 Conn. 736. More significantly, in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 78, our Supreme Court imposed the burden of demonstrating harmless error on the respondent where the jury should have received a *Salamon* instruction but did not. This requires the reviewing court to conclude "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) Id., 77–78.

Our consideration of the petitioner's appellate claim, therefore, must include the principles regarding the crime of kidnapping stated in *State* v. *Salamon*, supra, 287 Conn. 509, as viewed through the lens shaped by the subsequent cases of *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56, *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740, and *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 415, as well as others cited in the various opinions released today.

[9] According to Royer, the petitioner ordered her to remain in the refrigerator for fifteen minutes. The petitioner's statement to the police differed from Royer's testimony. Specifically, the petitioner indicated that he had instructed her to "step in [the refrigerator] for a minute and I'll come back and get you when I'm through."

In *Epps* v. *Commissioner of Correction*, 153 Conn. App. 729, 740–41, 104 A.3d 760 (2014), appeal dismissed, 327 Conn. 482, 175 A.3d 558 (2018) (certification improvidently granted), we noted that, under the applicable harmless error analysis, a reviewing court must be satisfied beyond a reasonable doubt that the omitted element was uncontested and support by overwhelming evidence. We also explained, in that case, that the allegations regarding the criminal conduct neither were uncontested nor supported by overwhelming evidence, in part because the perpetrator disputed the victim's testimony of events at the crime scene. Id., 741. As a result, we declined to weigh the evidence in order to conclude that the missing *Salamon* instruction in the case was harmless. Id., 741–42.

[10] In conducting this analysis, we do not intend to dismiss or ignore that the increased fear, if not terror, that Smith and Royer experienced as they were ordered into the confines of the walk-in refrigerator as commanded by the petitioner. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 80 n.15; *State* v. *Flores*, supra, 301 Conn. 88.

[11] The dissent accurately and succinctly sets forth the facts of *State* v. *Salamon*, supra, 287 Conn. 514–15, to distinguish the result in that case from the present case. In response, we note the facts in *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 56. In that case, the petitioner, Walter Hinds, wearing only underwear and a sleeveless shirt, followed the sixteen year old victim as she walked through a parking lot at night. Id., 61–62. Hinds pursued the fleeing victim, grabbed her, covered her mouth, threatened her, and threw her to the ground. Id., 62. He then dragged her to a grassy area between the parking lot and a small house, where it was darker, and sexually assaulted her.

In concluding that the absence of a *Salamon* instruction was not harmless, our Supreme Court noted that that conduct in *Hinds* was a continuous,

uninterrupted course of conduct that lasted only minutes. Id., 80. Additionally, it observed that "when the evidence regarding the perpetrator's intent is susceptible to more than one interpretation, that question is one for the jury." Id., 79. The court set forth various plausible explanations for Hinds' intent in moving the victim to the dark, grassy area. Id., 80. It then concluded that "[t]he close alignment in time and place of [the victim's] restraint and abduction to the sexual assault calls into serious question whether reasonable jurors would conclude that [Hinds] intended to restrain [the victim] for any purpose other than the commission of the sexual assault." Id., 93–94.

We do note, however, that Hinds could have sexually assaulted the victim at the specific location that he restrained the victim and threw her to the ground. Id., 62. He instead moved the victim to a different location. In other words, although it did not appear necessary for this asportation, our Supreme Court nevertheless concluded that the absence of the *Salamon* instruction was not harmless beyond a reasonable doubt.

[12] "Sisyphus, the mythical King of Corinth who was sentenced by Zeus to an eternity in Hades trying to roll a rock uphill which forever rolled back upon him." (Internal quotation marks omitted.) *Huch* v. *United States*, 439 U.S. 1007, 1012, 99 S. Ct. 622, 58 L. Ed. 2d 684 (1978) (Rehnquist, J., dissenting).