******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN FARMER *v.* COMMISSIONER OF CORRECTION
(AC 36923)

Lavine, Sheldon and Mullins, Js.

*Argued January 11—officially released May 10, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Bright, J.)

*Mary Boehlert*, assigned counsel, for the appellant
(petitioner).

*Lisa Herskowitz*, senior assistant state's attorney,
with whom, on the brief, were *Brian Preleski*, state's
attorney, *Angela R. Macchiarulo*, senior assistant
state's attorney, and *Michael Proto*, assistant state's
attorney, for the appellee (respondent).

*Opinion*

MULLINS, J. In this habeas corpus action, the petitioner, John Farmer, challenged his kidnapping conviction on the ground that the trial court had failed to instruct the jury, in accordance with *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), that to find him guilty of kidnapping, it had to find that he intended to restrain the victim to a greater degree than was necessary to commit assault. The habeas court concluded that the trial court's failure to give this instruction was error, but that the error was harmless. As a result, the habeas court denied the petition for a writ of habeas corpus. We affirm the judgment of the habeas court.

The petitioner was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), and assault in the second degree in violation of General Statutes § 53a-60 (a) (1). After a trial, the jury found the petitioner not guilty of all of the crimes expressly pleaded in the information but found him guilty of the lesser included offenses of kidnapping in the second degree in violation of General Statutes § 53a-94 and assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The trial court sentenced the petitioner on those charges to a total effective term of twenty years imprisonment.

On direct appeal, this court affirmed the petitioner's conviction. *State* v. *Farmer*, 108 Conn. App. 82, 946 A.2d 1262, cert. denied, 288 Conn. 914, 954 A.2d 185 (2008). This court stated that the jury reasonably could have found the following facts: "The [petitioner] and the [victim] lived together in an apartment in Bristol. Starting in mid-morning on October 19, 2004, they began to drink heavily and continued to do so through the day and evening. After watching a baseball game on television at the home of the [petitioner's] brother, the [victim] began to drive both of them home. The [petitioner] insisted that he should drive because she was too inebriated to do so. He assaulted her physically to force her to relinquish the driving of the car to him. Instead of driving them home to their apartment, the [petitioner] drove to a desolate dirt road in Burlington where he resumed his physical assault of the [victim], removed her underclothes and engaged in sexual conduct with her. Eventually, the [petitioner] drove the [victim] to his mother's house in Bristol. The next morning he allowed her to drive herself home. . . .

"[The victim] called the police, whom she accompanied to the dirt road where the [petitioner] had taken her. There they found her ripped underwear on the ground. A subsequent physical examination of the [victim] at Bristol Hospital confirmed that she had been beaten.

"The [petitioner] did not deny striking the [victim]

but said that he had done so in self-defense after the [victim] had begun hitting him. He acknowledged that he had engaged in sexual conduct with the [victim] but alleged that their sexual engagement had been consensual. The jury rejected his first defense but accepted the second one." Id., 84–85.

The petitioner thereafter filed an amended petition for a writ of habeas corpus. In his amended petition, he alleged, in count two,[1] that his kidnapping conviction could not stand because it was obtained under the pre-*Salamon* interpretation of the kidnapping statute.[2] After a trial, the habeas court denied the petition. In its memorandum of decision, the habeas court concluded that the trial court's instructional impropriety was harmless. The habeas court then granted the petitioner's petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the petitioner claims that the habeas court improperly concluded that the trial court's failure to instruct the jury on the kidnapping charge in accordance with the principles of *Salamon* was harmless. We disagree.

We first set forth the applicable standards of review and principles of law. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 375, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*,    U.S.   , 135 S. Ct. 1453, 191 L. Ed. 2d 403 (2015). The applicability of *Salamon* and whether the trial court's failure to give a *Salamon* instruction was harmless error are issues of law over which our review is plenary. *State* v. *Thompson*, 118 Conn. App. 140, 155, 983 A.2d 20 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010).

"Our Supreme Court in *Salamon* . . . held that to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. . . . The court explained further [that] there are instances where a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. . . .

"Stated differently, [our kidnapping statutes do] not

impose liability for the crime of kidnapping where the restraint used is merely incidental to the commission of another offense. . . . [This] interpretation . . . narrowed the previous scope of liability under [those] statute[s]. [T]he appropriate remedy for the instructional impropriety identified in *Salamon* is to reverse the [petitioner's] kidnapping conviction and to remand the case to the trial court for a new trial. . . .

"Our Supreme Court in *Luurtsema* [v. *Commissioner of Correction*, 299 Conn. 740, 764, 12 A.3d 817 (2011)] held that the [decision] in *Salamon* appl[ies] retroactively to collateral attacks on final judgments. . . . As applied to currently incarcerated individuals, our Supreme Court concluded that when an appellate court provides a new interpretation of a substantive criminal statute, an inmate convicted under a prior, more expansive reading of the statute presumptively will be entitled to the benefit of the new interpretation on collateral attack. . . .

"Despite the presumptive entitlement to the benefit of the new interpretation on collateral attack . . . our Supreme Court in [*Luurtsema*] declined the petitioner's invitation to adopt a per se rule in favor of full retroactivity . . . because a review of the diverse contexts in which such challenges have arisen persuade[d] [the court] that there are various situations in which to deny retroactive relief may be neither arbitrary nor unjust. . . . If the absence of a *Salamon* instruction resulted in harmless error, then a remand for a new trial is not necessary.

"Our Supreme Court in *Luurtsema* discussed the disposition of cases where the failure to give a *Salamon* instruction was harmless. [The court] expect[ed] that courts will be able to dispose summarily of many cases where it is sufficiently clear from the evidence presented at trial that the petitioner was guilty of kidnapping, as properly defined, [and] that any error arising from a failure to instruct the jury in accordance with the rule in *Salamon* was harmless. . . .

"Our Supreme Court in [*State* v. *Hampton*, 293 Conn. 435, 463–64, 988 A.2d 167 (2009)] set forth the test for determining whether the failure to give the *Salamon* instruction is harmless. [T]he test for determining whether a constitutional [impropriety] is harmless . . . is whether it appears beyond a reasonable doubt that the [impropriety] complained of did not contribute to the verdict obtained." (Citations omitted; internal quotation marks omitted.) *Eric M.* v. *Commissioner of Correction*, 153 Conn. App. 837, 843–45, 108 A.3d 1128 (2014), cert. denied, 315 Conn. 915, 106 A.3d 308 (2015).

In the present case, the following additional facts, as found by the habeas court, illuminate our disposition of the petitioner's claim on appeal. "[T]he evidence at the petitioner's criminal trial show[ed] that there was

a significant amount of movement of the victim, and that the abduction lasted for several hours. . . .[3] Additionally, a review of the testimony at the petitioner's criminal trial reveals that while the petitioner was driving, the victim repeatedly requested to exit the vehicle and attempted to exit the car three or four times, but the petitioner grabbed her and prevented her from escaping.

"It is clear from the record that the petitioner intended to prevent the victim's liberation for a longer period of time than that which was necessary to commit the assault. The restraint necessary, if any, for the [petitioner] to have assaulted the victim in this case was minimal in comparison to the amount of time that he held her against her will. The [petitioner's] prolonged restraint of the victim in her car while driving her to and from the desolate area, and while forcing her to remain in the car overnight at his mother's house after the assault occurred, could not reasonably be considered merely incidental to the assault charges." (Footnote added.) Our review of the record persuades us, as it did the habeas court, that the trial court's failure to give a *Salamon* instruction was harmless.

Here, the facts demonstrate that there is no reasonable doubt that the petitioner's restraint of the victim was not merely incidental to the assault because he restrained her for a longer period of time than was necessary to assault her, and, therefore, the restraint had independent criminal significance. Indeed, as this court stated in *State* v. *Nelson*, 118 Conn. App. 831, 861, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010), "[t]he substantial length of the victim's restraint following the assaultive conduct by the defendant is significant to our analysis. The defendant's restraint during such a substantial amount of time is overwhelming evidence of [his] intent to prevent the victim's liberation for a longer period of time than that necessary for the commission of any other crime."

The evidence in the present case established that the petitioner first assaulted the victim while she still was driving the car. Following that assault, the petitioner restrained the victim over a period of several hours beginning when he prevented her from exiting the car shortly after they left his brother's house and ending six to seven hours later when he permitted her to drive home from his mother's house.[4] This lengthy confinement established the petitioner's intent to prevent the victim's liberation for a longer period of time than that necessary for the commission of the assault.

The fact that other assaults occurred throughout the restraint is of no moment given that the petitioner restrained the victim for significant portions of time when he was not assaulting her.[5] See *State* v. *Jordan*, 129 Conn. App. 215, 223, 19 A.3d 241 (holding that defendant restrained victims to greater degree than necessary

to commit assaults where, although assaultive behavior spanned entire forty-five minute duration of victims' confinement, evidence showed that even when not assaulting victims defendant controlled their movements, forcing them to clean blood off walls and preventing them from leaving), cert. denied, 302 Conn. 910, 23 A.3d 1248 (2011). Here, even when he was not assaulting her, the petitioner prevented the victim from leaving the car for hours, despite her pleas to him to let her go.

To be sure, in comparison to the span of time over which the jury reasonably could have found that the petitioner restrained the victim, his assaults on her were brief. See *Eric M.* v. *Commissioner of Correction*, supra, 153 Conn. App. 846–47 (five hour period of restraint both before and after sexual assault not merely incidental to commission of sexual assault or other crimes of which petitioner was convicted). As the habeas court aptly concluded, "the restraint necessary, if any, for the [petitioner] to have assaulted the victim in this case was minimal in comparison to the amount of time that he held her against her will." Indeed, in its closing argument at the petitioner's criminal trial, the state argued that the restraint had begun prior to their arrival in Burlington. The state further argued that the petitioner had assaulted the victim in the car as they travelled to and reached the dirt road in Burlington. The state did not argue that any physical assaults occurred after they left Burlington. In fact, the state emphasized that the petitioner continued to restrain the victim long after he had ceased assaulting her: "the two of [them] remain[ed] in the car that night. And finally the following morning [the petitioner] [let] her go home."

The state's theory—which was supported by the evidence—that the restraint encompassed the entire period the victim was in the car after the petitioner started driving, *including the overnight period*, only confirms that the lack of the *Salamon* instruction was harmless. After the couple left Burlington, and after the assaults had concluded, the petitioner continued to prevent the victim's liberation for another several hours until morning. Thus, as the habeas court found, the petitioner "forc[ed the victim] to remain in the car overnight at his mother's house *after* the assault occurred . . . ." (Emphasis added.) This final, lengthy period of restraint—after leaving Burlington and lasting until morning—is overwhelming evidence of the petitioner's intent to restrain the victim's liberty for a longer duration than necessary to commit another crime. See *State* v. *Nelson*, supra, 118 Conn. App. 861.

The fact that the petitioner drove the victim from one town to another further demonstrates that the restraint here was not merely incidental to the assaults. See *State* v. *Strong*, 122 Conn. App. 131, 143, 999 A.2d 765

(defendant's prolonged restraint of victim in car for more than one hour while forcing her to drive from one town to another not merely incidental to threats made before and during restraint), cert. denied, 298 Conn. 907, 3 A.3d 73 (2010).

Furthermore, the petitioner's prolonged confinement of the victim in this case reasonably could not be considered merely incidental to the assaults that already had concluded by the time he drove from Burlington to Bristol and forced her to remain in the car until morning. Certainly, by the time the petitioner restrained the victim in the car at his mother's house, a jury could conclude that the assaults had helped the petitioner to restrain the victim. Conversely, no jury reasonably could conclude that the restraint at this point was incidental to any assault. Thus, this case—namely, one in which the assaults were incidental to the kidnapping— appears to be the converse of a *Salamon* situation. Cf. *State* v. *Winot*, 294 Conn. 753, 764 n.7, 988 A.2d 188 (2010) (*Salamon* rule not applicable where, even if defendant's restraint of victim also could be found to have violated other criminal statutes, "no jury reasonably could conclude that the kidnapping was incidental to [the] commission of those crimes, rather than the converse").

In sum, after reviewing all of the evidence presented, we do not believe that a rational jury, even if properly instructed, could find that the petitioner's restraint of the victim was inherent in, or incidental to, assault or any other crime. As a result, it appears beyond a reasonable doubt that the failure of the trial court to give a *Salamon* instruction did not contribute to the guilty verdict and, therefore, was harmless. Accordingly, the habeas court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Count one, in which the petitioner alleged the ineffective assistance of trial counsel, is not at issue on this appeal.

[2] The respondent, the Commissioner of Correction, filed a return in which he asserted the affirmative defense of procedural default on the basis of the petitioner's failure to raise his claim at trial or on direct appeal. In his reply to the return, the petitioner asserted that his claim was not procedurally defaulted because he had good cause for failing to raise the claim previously and had been prejudiced by the trial court's failure to instruct the jury properly on the kidnapping charge. The habeas court concluded that the claim had not been procedurally defaulted. The habeas court's ruling on procedural default is not challenged in this appeal.

[3] The petitioner held the victim against her will for somewhere between six and seven hours. Specifically, the evidence showed that the restraint commenced somewhere between midnight and 1 a.m. The victim testified that it was 11:30 p.m. and the petitioner testified that it was approximately 12:45 or 1 a.m. when he took over driving the car. When he finally permitted her to leave his mother's house several hours after he had co-opted the victim's car, the victim testified that it was starting to grow light outside, and the petitioner testified that it was approximately 7:30 a.m.

[4] As it relates to the kidnapping, the state argued the following in its closing argument at the petitioner's criminal trial. When the petitioner and victim left his brother's house, they were in agreement that they were going

home, and the victim was driving. At some point during the drive, there was violence between them, the petitioner took over driving the car, and he decided that they were not going to go home. Instead, he drove them to the deserted dirt road in Burlington. As they travelled to Burlington, the victim attempted to get out of the car, but the petitioner prevented her from doing so. After they left Burlington, the petitioner still did not permit her to leave; rather, he made her remain with him in the car until he finally let her go in the morning.

[5] The victim testified that the petitioner hit her several times while he drove the car.

---