******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMAAL COLTHERST *v.* COMMISSIONER
# OF CORRECTION
# (AC 43864)

Elgo, Cradle and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of multiple crimes, including murder, sought a writ of habeas corpus, claiming that he received ineffective assistance of counsel in the two criminal matters underlying his petition and that his conviction of kidnapping in the first degree with a firearm violated his right to due process. The first incident occurred in Hartford, and the second incident occurred four days later, and was tried in New Britain. Specifically, he claimed that the jury in the New Britain case was not instructed to determine whether the victim was restrained to an extent exceeding that which was necessary to complete the other crimes, as required by *State* v. *Salamon* (287 Conn. 509). Thereafter, the habeas court rendered judgment denying the habeas petition, and the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The petitioner could not prevail on his claims that counsel in his underlying criminal matters rendered ineffective assistance.

   a. The habeas court correctly determined that the petitioner's trial counsel, O, in the Hartford case did not provide ineffective assistance by failing to advise him adequately regarding his decision to testify: the petitioner failed to meet his burden of demonstrating that O's conduct fell below an objective standard of reasonableness and failed to overcome the presumption that his counsel acted competently; the court's finding that O met with the petitioner to discuss his case eighteen times was supported by the petitioner's own testimony, and, although O could not recall how he advised the petitioner regarding whether he should testify, O testified regarding what he would normally do with respect to advising a criminal defendant about whether to testify, and the court found O's testimony to be credible; moreover, O could not have foreseen that the petitioner would not testify truthfully, which resulted in the petitioner opening the door to the introduction of evidence concerning the New Britain case.

   b. The habeas court correctly determined that the petitioner's trial counsel in the New Britain case, C, did not provide ineffective assistance by failing to adequately advise him about a plea offer to resolve that case: the record supported the habeas court's conclusion that the petitioner failed to meet his burden of demonstrating that the trial court would have accepted the plea agreement, as the petitioner presented no evidence to that effect, and, even if this court assumed the existence of such an agreement, the petitioner's equivocal testimony that he "possibly" would have accepted the plea offer was insufficient to meet his burden of demonstrating a reasonable probability that, if not for C's defective performance, he would have accepted the plea offer.

2. The petitioner's claim that his kidnapping conviction in the New Britain case violated his right to due process because the jury was not instructed to determine whether the victim was restrained to an extent exceeding that which was necessary to complete the other crimes was unavailing: the court correctly determined that the absence of a *Salamon* instruction at the petitioner's criminal trial constituted harmless error; the court thoroughly addressed each of the *Salamon* factors as applied to the facts of the present case and made factual findings in connection therewith, which were not clearly erroneous, as the restraint and movement of the victim were done to facilitate the petitioner's escape from the robbery scene, not to accomplish the robbery itself, and, as such, they had independent criminal significance, the court's determination that those factors did not favor the petitioner was supported by the record, and, thus, the absence of a *Salamon* instruction could not have substantially affected or influenced the jury's verdict.

Argued September 9—officially released November 2, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, for the appellant (petitioner).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Wolcott* and *Brian W. Preleski*, state's attorneys, and *Tamara Grasso*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Jamaal Coltherst, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that (1) he received ineffective assistance of trial counsel in both of the underlying criminal matters that formed the basis for his habeas petition and (2) because the jury in one of his underlying criminal matters was not instructed to determine whether the victim in that case was restrained to an extent exceeding that which was necessary to complete other crimes, as required by *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), his conviction of kidnapping in the first degree with a firearm in that case violated his constitutional right to due process. We disagree and affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's claims on appeal. The petitioner's habeas petition concerns his convictions of various crimes in two underlying criminal matters. The first matter occurred in Hartford in 1999 (Hartford case), and the second matter occurred in Wethersfield four days after the incident in Harford, and was tried in New Britain (New Britain case). In the Hartford case, the petitioner was convicted of nine different offenses related to a carjacking incident,[1] and, following resentencing, he was sentenced to a total effective sentence of eighty years of incarceration, which was to run consecutive to the sentence imposed in the New Britain case.

The petitioner filed a direct appeal from his conviction in the Hartford case to our Supreme Court, which set forth the following relevant facts. On the evening of October 15, 1999, the petitioner and a friend, Carl Johnson, who was armed with a gun, rode mountain bikes "to an exotic dance club known as Kahoots, located on Main Street in East Hartford, arriving at approximately 7:30 p.m. They parked the bicycles in the bushes behind the club and then walked around the parking lot to identify cars that they might want to carjack. . . .

"The [petitioner] and Johnson [left the Kahoots parking lot briefly to look elsewhere for cars to carjack but] returned to Kahoots . . . at approximately 9 p.m. They hid their bicycles behind the Rent-A-Wreck building located next to the club. They saw a 1999 Toyota 4Runner parked in the Rent-A-Wreck parking lot and waited there for the driver to return so that they could carjack the car. While they were waiting, a black Honda Accord pulled up behind Rent-A-Wreck. The driver, later identified as Kyle Holden (victim), exited the car and went into Kahoots. Some time later, when the victim came out of Kahoots and headed toward his car, the [peti-

tioner] and Johnson ran up to him. Johnson pointed his gun at the victim's head and demanded the keys to the car. The [petitioner] took them. Johnson then gave the gun to the [petitioner] and took the keys himself. Johnson and the [petitioner] forced the victim into the backseat of the car, where the [petitioner] joined him. They then drove to an automatic teller machine (ATM) located next to the Triple A Diner. The [petitioner] took the victim's wallet, removed his ATM card and demanded the victim's personal identification number. The [petitioner then] gave the card to Johnson, who used it to withdraw money from the ATM.

"Johnson then drove to a nearby entrance ramp for Interstate 84, where he pulled over to the side of the road. The [petitioner] and Johnson got out of the car, and the [petitioner] gave the gun to Johnson. Johnson then ordered the victim to get out of the car. The victim went to the far side of the guardrail, where he sat down. The [petitioner] removed the victim's belongings from the car and then got back into the car's passenger side seat. At that point, the [petitioner] saw Johnson shoot the victim at point blank range in the back of the head. The victim died within seconds. Johnson then got back into the car. The [petitioner] asked him why he had shot the victim, and Johnson said that he did not want any witnesses." (Footnote omitted.) *State* v. *Coltherst*, 263 Conn. 478, 484–86, 820 A.2d 1024 (2003). Our Supreme Court affirmed the petitioner's judgment of conviction in the Hartford case. See id., 483.

In the New Britain case, the petitioner was convicted of fifteen different offenses, including kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a and two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and (2).[2] The petitioner was sentenced in the New Britain case to eighty-five years of incarceration, to run consecutive to the sentence imposed in the Hartford case.

The petitioner appealed his conviction in the New Britain case to this court, which set forth the following relevant facts: "On October 19, 1999, the [petitioner] . . . Johnson and Rashad Smith were sitting in a stolen black Honda Accord near 85 Wolcott Hill Road in Wethersfield. The trio had smoked marijuana. Sometime after darkness fell, the victim, Michael Clarke, returned to Camilleri and Clarke Associates, Inc., the insurance brokerage firm located there, of which he was an owner. He had left his motor vehicle, a black Lincoln Mark VIII valued at approximately $28,000, in the firm's parking lot. After [Clarke] had been in the building for some time, his dog began to bark, and so [Clarke] went outside. After [Clarke] left the building, he was accosted by the [petitioner] and Johnson. The [petitioner] wore a red sweatshirt or parka. [Clarke] was instructed to turn over the keys to his vehicle. One of the men pointed

a gun at [Clarke], and told him to go back into the building and to his office.

"In the office, while one of the men continued to point the gun at [Clarke], the other held [Clarke]. The [petitioner] and Johnson took [Clarke's] laptop computer and credit card. They threatened [Clarke] and ordered him to provide the access code for the card so that they could use it to obtain cash. Johnson took the computer while the [petitioner] took the credit card. The [petitioner] and Johnson stated that they were going to take [Clarke] to the car, and after he protested and resisted, he was struck twice in the face with the gun. [Clarke] was pushed outside, continued to struggle with the two men and broke away from them before being forced into the car. [Clarke] started to flee and called out for help, but was soon tackled by Johnson. [Clarke] then struggled with the [petitioner], who took out a .22 caliber Beretta and shot [Clarke] in the head. The [petitioner] and Johnson fled the scene in [Clarke's] Lincoln while Smith drove the Honda Accord.

"Oscar Rivera, a Wethersfield police officer, arrived at the scene after being notified of the assault. He found [Clarke] lying on the ground in the parking lot, which was otherwise empty. At that time, [Clarke] was responsive, but had suffered visible injuries. Medical personnel subsequently transferred [Clarke] to Hartford Hospital for treatment. [Clarke] was hospitalized for nine to ten days and then was transferred to a rehabilitation facility for an additional seven weeks of therapy." (Footnotes omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 96–98, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005). This court affirmed in part[3] the petitioner's conviction in the New Britain case. See id., 96.

Following the resolution of his direct appeals in the Harford and New Britain cases, the petitioner filed a petition for a writ of habeas corpus, which is the subject of this appeal. He first filed a petition on June 10, 2015, in a self-represented capacity but later filed an amended petition, through counsel, on August 27, 2018. In his amended habeas petition, the petitioner alleged nine separate grounds for reversal of his convictions, all but three of which were withdrawn prior to the habeas trial. The three remaining counts alleged (1) ineffective assistance by trial counsel in the Hartford case, (2) ineffective assistance by trial counsel in the New Britain case, and (3) that the petitioner's kidnapping conviction in the New Britain case violated the petitioner's right to due process. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. Additional facts will be set forth as necessary.

I

In this appeal, the petitioner raises two claims related to the habeas court's denial of his ineffective assistance

of counsel claims—one related to the Hartford case and the other to the New Britain case. We address each in turn. First, we set forth our well settled standard of review and legal principles applicable to claims of ineffective assistance of counsel in habeas matters.

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . . Therefore, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Charles* v. *Commissioner of Correction*, 206 Conn. App. 341, 346,    A.3d    (2021).

"The sixth amendment to the United States constitution guarantees a criminal defendant the assistance of counsel for his defense. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance and a prejudice prong. To satisfy the performance prong, a [petitioner] must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Although a petitioner can succeed only if he satisfies both prongs, a reviewing court can find against the petitioner on either ground. . . .

"We . . . are mindful that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . Similarly, the United States Supreme Court has emphasized that a reviewing court is required not simply to give [counsel] the benefit of the doubt . . . but to affirmatively

entertain the range of possible reasons . . . counsel may have had for proceeding as [he or she] did. . . .

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is reasonably likely the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 205 Conn. App. 837, 857–58, 257 A.3d 343 (2021).

A

The petitioner claims that the habeas court improperly determined that his trial counsel in the Hartford case did not provide ineffective assistance by failing to advise the petitioner adequately regarding his decision to testify at the underlying criminal trial in the Hartford case. We disagree.

With respect to the claim of ineffective assistance of counsel in the Hartford case, the habeas court found the following relevant facts: "In the Hartford case, the petitioner was represented at all relevant times by Attorney Donald O'Brien. He met with the petitioner approximately eighteen times during which he discussed the evidence. The defense theory at trial was that the petitioner was not involved and, instead, it was the codefendant . . . Johnson who was responsible for the crimes. The gun was connected to . . . Johnson and the defense sought to put the blame on Johnson's shoulders. The petitioner, seventeen at the time of the offenses, had given various statements to the police. Defense counsel attempted to discredit the statements by questioning the way in which police obtained the statements from the petitioner and argued to the jury that [it] should not believe the contents of the statements. Since almost twenty years have passed since the petitioner's underlying trial, Attorney O'Brien did not remember many details of the trial or his communications with the petitioner. He testified credibly, however, that he would have discussed with the petitioner his right to testify and, in doing so, would have laid out the evidence the state presented up to that point during the trial. If he believed the state had not proven its case beyond a reasonable doubt, he would have encouraged the petitioner to not testify because doing so would give the prosecution an opportunity to vigorously cross-examine the petitioner and potentially fill in the gaps in the state's case. He insisted that the decision to testify belongs to the petitioner.

"The petitioner did testify in the Harford case and, according to Attorney O'Brien, did well on direct examination. He denied making many of the statements con-

tained in his written statements given to the police. 'One of those statements indicated that the [petitioner] had stated to the police that, on the night of the crime, he and Johnson parked [their] bikes in the bushes behind Kahoots and walked around the parking lot looking for cars that [they] might want to jack.' . . . *State* v. *Coltherst*, supra, 263 Conn. 508. During cross-examination, he was asked what it meant to jack a car. The petitioner replied that he did not know because he did not jack cars. As a result of this, the state sought to question the petitioner about [the] carjacking that occurred in Wethersfield four days after the Hartford incident or, in the alternative, [to] admit a redacted version of his statement to the police admitting to the Wethersfield crime. After some back and forth, the state and defense counsel agreed that the state would conduct a limited inquiry into this area, and the court subsequently gave a limiting instruction to the jury.

"According to the petitioner, Attorney O'Brien talked to him about testifying at the trial a few days before his testimony and they discussed it for only a few minutes. The petitioner testified that had Attorney O'Brien told him that he could be cross-examined about the Wethersfield carjacking incident, he would . . . not have testified the way he did. At the very least, according to the petitioner, he would have been better prepared to testify." (Footnote omitted.)

In rejecting the petitioner's claim that Attorney O'Brien provided ineffective assistance, the habeas court stated: "The only surviving claim against Attorney O'Brien is that he did not adequately advise the petitioner about testifying, nor did he adequately prepare him to testify. The petitioner has not met his burden of proof with regard to this claim. The petitioner's claim appears to be that, had Attorney O'Brien told the petitioner that he could be questioned about the Wethersfield carjacking, the petitioner would not have misled the jury by saying that he didn't jack cars.

"The court struggles to understand how Attorney O'Brien can be faulted for the petitioner's decision, sua sponte, to testify in a manner that he knew not to be true. There is no deficient performance. Further, the state's evidence against the petitioner was significant. Even assuming any deficient performance, the petitioner has not proven prejudice. Thus, this claim must be denied."

The following relevant legal principles guide our analysis of this claim. "[I]t is the right of every criminal defendant to testify on his own behalf . . . and to make that decision after full consultation with trial counsel." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 195, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011). "It is the responsibility of trial counsel to advise a defendant of the defendant's right to testify and to

ensure that the right is protected. [T]he if and when of whether the accused will testify is primarily a matter of trial strategy to be decided by the defendant and his attorney. . . . The decision of whether to testify on one's own behalf, however, ultimately is to be made by the criminal defendant." (Citation omitted; internal quotation marks omitted.) *Victor C.* v. *Commissioner of Correction*, 179 Conn. App. 706, 715, 180 A.3d 969 (2018). "A defendant is entitled to decide whether to testify in his or her own case and is further entitled to have advice from counsel concerning that decision. . . . Counsel's duty to advise includes the duty to keep the defendant informed of all developments in the case material to the defendant's decision to testify. . . . Deciding whether to testify on one's own behalf is often among the most difficult choices a criminal defendant must make during trial. Testifying can present a risky and difficult ordeal for a defendant. Defense counsel therefore must keep the defendant apprised of all material information known to counsel in order to help the defendant in making that decision." (Internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 260–61, 248 A.3d 4 (2021). "[T]he habeas court must presume that counsel acted competently and the burden lies with the petitioner, as the party asserting ineffectiveness, to overcome this presumption . . . ." *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 517 n.2, 142 A.3d 243 (2016).

The petitioner claims that Attorney O'Brien provided ineffective assistance because he "failed to advise [the petitioner] about general principles surrounding the admissibility of evidence related to the New Britain [case] and how his answers to certain questions might result in opening the door to more damaging evidence being offered against him." According to the petitioner, "[i]f [Attorney O'Brien] had informed the petitioner that his testimony could expose him to the risk of having the jury hear about the New Britain [case], it could have changed his decision to testify completely."

Given that twenty years had passed between the petitioner's criminal trial in the Hartford case and the habeas trial, Attorney O'Brien had trouble recalling exactly what advice he had given to the petitioner. The habeas court, however, found that Attorney O'Brien "testified credibly . . . that he would have discussed with the petitioner his right to testify and . . . the evidence the state presented up to that point during the trial," that, if he believed the state had not met its burden of proof beyond a reasonable doubt, "he would have encouraged the petitioner to not testify," and that, ultimately, "the decision to testify belong[ed] to the petitioner." As this court previously has explained, "[t]ime inevitably fogs the memory of busy attorneys. That inevitability does not reverse the *Strickland* presumption of effective performance. Without evidence

establishing that counsel's strategy arose from the vagaries of ignorance, inattention or ineptitude . . . *Strickland*'s strong presumption must stand." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 177 Conn. App. 321, 333, 175 A.3d 565, cert. denied, 327 Conn. 990, 175 A.3d 563 (2017); see also *Rodriquez* v. *Commissioner of Correction*, 35 Conn. App. 527, 536–37, 646 A.2d 919 (fact that attorney could not recall specifically informing petitioner of right to testify did not establish that he never told petitioner of his right to testify and was not sufficient, by itself, to demonstrate deficient performance), cert. denied, 231 Conn. 935, 650 A.2d 172 (1994).

Our review of the record supports the habeas court's conclusion that the petitioner failed to meet his burden of demonstrating deficient performance by Attorney O'Brien. The habeas court's finding that Attorney O'Brien had met with the petitioner to discuss his case eighteen times was supported by the petitioner's own testimony. Although Attorney O'Brien could not recall what advice he may have given to the petitioner regarding whether the petitioner should testify, he did testify regarding what he would normally do with respect to advising a criminal defendant about whether to testify, and the habeas court found his testimony to be credible. "We will not disturb a habeas court's factual finding that turns on its evaluation of the credibility of witnesses. See *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 279, 149 A.3d 185 (2016) ('[a] reviewing court ordinarily will afford deference to those credibility determinations made by the habeas court on the basis of [the] firsthand observation of [a witness'] conduct, demeanor and attitude' . . .), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017)." *Houghtaling* v. *Commissioner of Correction*, supra, 203 Conn. App. 263. Moreover, we agree with the habeas court that Attorney O'Brien could not have foreseen that the petitioner would not testify truthfully, which resulted in his opening the door to the introduction of evidence concerning the New Britain case. The petitioner, therefore, has not met his burden of demonstrating that Attorney O'Brien's conduct fell below an objective standard of reasonableness, nor has he overcome the presumption that his counsel acted competently. See *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 517 n.2; *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 576–77, 941 A.2d 248 (2008). Accordingly, the habeas court properly denied the habeas petition with respect to the petitioner's claim of ineffective assistance by Attorney O'Brien in the Hartford case.[4]

B

The petitioner next claims that the habeas court improperly determined that trial counsel in the New Britain case did not provide ineffective assistance by failing to advise the petitioner adequately about a sev-

enty year plea offer to resolve the New Britain case. We disagree.

With respect to the claim of ineffective assistance of counsel in the New Britain case, the habeas court found the following relevant facts: "The petitioner was represented in the New Britain case by Attorney Thomas Conroy. At the time of the New Britain trial, the petitioner was already sentenced in connection with the Hartford case. There may have been a plea offer pursuant to which the petitioner would have been sentenced to a term of imprisonment of seventy [years of] incarceration, concurrent to his Hartford sentence, but Attorney Conroy could not recall any of the details of the plea negotiations. The petitioner could not recall if Attorney Conroy discussed the plea offer with him.

"During the New Britain trial, the state sought to introduce a letter written by the petitioner to his codefendant . . . Johnson in which the petitioner offered Johnson money to tell the police that the petitioner had not been involved. This letter had been introduced at the Hartford trial as consciousness of guilt. In the New Britain trial, the letter was not introduced, but the petitioner's testimony on this subject from the Hartford trial was read to the jury. The petitioner now claims that Attorney Conroy did not tell him that this testimony would be admitted at the New Britain trial and, had he done so, the petitioner would have possibly considered pleading guilty instead of going to trial."

In rejecting the petitioner's claim that Attorney Conroy provided ineffective assistance, the habeas court stated: "Even though the court has granted the petitioner's motion to amend the pleadings to allege a claim that Attorney Conroy failed to adequately advise the petitioner regarding the plea, there is simply no evidence that this is the case. For starters, the petitioner has presented no evidence from which this court can conclude that there was a firm offer of seventy [years of] incarceration. Attorney Conroy testified that he thought the offer might have been for seventy years. There was no testimony about the charges to which the petitioner would have to plead guilty to receive that sentence. Further, there was no evidence whatsoever from which this court could conclude that, even if such an offer were made, the trial court would have accepted the offer, a necessary requirement under our case law. Finally, the petitioner's testimony in this regard is also unpersuasive. He testified that he possibly would have considered pleading guilty to the offer if he had known that his testimony from the Hartford trial would have been admitted. The court does not find this credible. Thus, the claim is denied."

As we have stated previously, "[i]n order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish both prongs of the *Strickland* test. . . . [A] habeas court may dismiss the petitioner's claim

if he fails to satisfy either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Internal quotation marks omitted.) *Carrasquillo* v. *Commissioner of Correction*, 206 Conn. App. 195, 205,     A.3d     (2021). To establish prejudice when a petitioner has rejected an alleged plea offer due to ineffective assistance of counsel, the petitioner must establish "that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities. . . . If the habeas court determined that . . . it is not reasonably probable that the trial court would have imposed the sentence embodied in the plea agreement, the prejudice prong has not been satisfied." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 834–35, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

Our review of the record in the present case supports the habeas court's conclusion that the petitioner failed to meet his burden of demonstrating that the trial court would have accepted the plea agreement. The petitioner presented no evidence to that effect, despite having offered eleven exhibits into evidence at the habeas trial. In fact, the record is bereft of any evidence that a firm plea agreement for seventy years of incarceration even existed,[5] let alone that the court would have accepted the agreement. Even if we assume the existence of such an agreement, the petitioner's equivocal testimony that he "[p]ossibly" would have accepted the plea offer was not sufficient to meet his burden of demonstrating a reasonable probability that, if not for Attorney Conroy's deficient performance, he *would have accepted* the plea offer. Because the petitioner has failed to establish that he was prejudiced by Attorney Conroy's allegedly deficient performance in the plea bargain context, the habeas court properly denied the habeas petition with respect to this claim.[6]

## II

The petitioner next claims that his kidnapping conviction in the New Britain case violated his right to due process because the jury in that case was not instructed to determine whether Clarke was restrained to an

extent exceeding that which was necessary to complete the other crimes, as required by *State* v. *Salamon*, supra, 287 Conn. 509. We are not persuaded.

The habeas court found the following relevant facts related to the petitioner's conviction in the New Britain case and his encounter with Clarke on October 19, 1999. After the petitioner and Johnson accosted Clarke, forced him into the building where he worked, took his laptop and credit card, and made him disclose the personal identification number for the credit card, they "then ordered him to get into his vehicle. He refused to do so, at which point one of them struck him with the gun and they both assaulted [Clarke]. This occurred while they were still inside the building. Clarke continued to fight with both of them but they opened the door to the building and pulled him outside by his arms and down the stairs leading out of the building into the parking lot. The petitioner and Johnson went to [Clarke's] car and opened the car door. They ordered Clarke to get into the backseat and pushed him into the car. Clarke was pushed close enough to the interior of the car that he was able to touch the seats and the center console. He was in the area between the door and the inside of the car for approximately twenty seconds. He was almost inside the car but not in the backseat. He used the seats and console as leverage to push himself backward and break free, which he did, and then ran back in the direction that they had come from but was tackled again. He screamed for help in the direction of a passerby. He was then pushed up against a wall by the petitioner, where they both struggled for thirty to forty seconds. The last thing he remembered was being pushed to the ground until police officers arrived.

"In his statement to police, which was admitted as substantive evidence for the jury, the petitioner admitted that their plan was to steal [Clarke's car] and force [Clarke] to come with them in the stolen vehicle so [Clarke] would be unable to call the police. According to the petitioner, Clarke did not want to go with them, but they were pulling him by his arms trying to force him outside the building and into the car. Both the petitioner and Johnson repeatedly tried to get Clarke inside the vehicle but were ultimately unsuccessful."

We first set forth our standard of review applicable to the petitioner's claim that his right to due process was violated as a result of the absence of a *Salamon* instruction to the jury. "In reviewing this issue, we are mindful that the facts found by the habeas court are subject to the clearly erroneous standard of review. *Farmer* v. *Commissioner of Correction*, 165 Conn. App. 455, 458, 139 A.3d 767, cert. denied, 323 Conn. 905, 150 A.3d 685 (2016). The applicability of *Salamon* and whether the court's failure to give a *Salamon* instruction was harmless error are issues of law over which our

review is plenary." (Internal quotation marks omitted.) *Pereira* v. *Commissioner of Correction*, 176 Conn. App. 762, 767–68, 171 A.3d 105, cert. denied, 327 Conn. 984, 175 A.3d 43 (2017).

To resolve the petitioner's *Salamon* claim on appeal, we must also provide some background concerning that case and certain changes in the law concerning how courts interpret our kidnapping statutes. In 2008, our Supreme Court decided *State* v. *Salamon*, supra, 287 Conn. 509, in which it "overruled [its] long-standing interpretation of the state's kidnapping statutes . . . ." *Banks* v. *Commissioner of Correction*, 339 Conn. 1, 4, A.3d (2021). Specifically, in *Salamon*, our Supreme Court, after conducting an "examination of the common law of kidnapping, the history and circumstances surrounding the promulgation of our current kidnapping statutes and the policy objectives animating those statutes . . . conclude[d] the following: Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 542. The court in *Salamon* also held that "when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination [of whether the movement of the victim has independent criminal significance or is merely incidental to an underlying crime] must be made by the jury"; (emphasis omitted) id., 547–48; which should be instructed to consider various factors, "including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of a separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 548.

In *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 748, 12 A.3d 817 (2011), our Supreme Court addressed the issue of "[w]hether individuals whose kidnapping convictions became final prior to [the court's] reconsideration [of the kidnapping statutes] in

*Salamon* may challenge the legality of their convictions based on the interpretation . . . adopted in [*Salamon*]," and determined that *Salamon* applies retroactively in habeas cases. Id., 751. Thus, even though the petitioner's conviction in the New Britain case became final before *Salamon* was decided, his claim that the jury was not properly instructed in accordance with *Salamon* was properly raised in his habeas petition. See *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 15–17.

In the present case, the habeas court determined that the fact that the jury had not been instructed in accordance with *Salamon* was harmless beyond a reasonable doubt, as "there [was] no 'reasonable possibility that a properly instructed jury would [have] reach[ed] a different result.' " In support of its conclusion, the habeas court examined the factors set forth in *Salamon* and made a number of findings, including that the instances of restraint of Clarke's liberty, which occurred when he was dragged by his arms out of the office building and was forced into his own vehicle, "were independent of, and exceeded, any restraint necessary to commit either a robbery, burglary, assault or larceny," and, thus, were not incidental to the commission of any of the charged offenses; although the duration of the restraint was not lengthy, its nature was significant; the confinement did not occur during the commission of a separate offense, as "the facts [did] not support the conclusion that the robbery was still underway at the time of the restraint on [Clarke's] movement"; the petitioner's restraint of Clarke was not inherent to the robbery, as "no jury could reasonably determine that the petitioner's acts of pulling [Clarke] by his arms out of the building and into the parking lot, and, further, the act of pushing [Clarke] into the vehicle, coupled with the petitioner's statements that they could not leave [Clarke] behind for fear of being identified, were inherent to the robbery of [Clarke], or even the burglary or larceny of his motor vehicle"; Clarke shouted for help from a passerby and, thereby, was able to summon assistance; Clarke was restrained for the purpose of reducing the petitioner's risk of identification; and, because the petitioner and Johnson had completed the robbery and the burglary, there was no need to further restrain Clarke, but by forcing Clarke into the parking lot and his vehicle, they significantly increased Clarke's risk of harm. In summary, the habeas court concluded that "the restraint and abduction of [Clarke] was in excess of any restraint needed to complete the commission of another crime. . . . [The] court has no doubt that the jury, even if properly instructed on incidental restraint, would have returned the same verdict."

The petitioner agrees with the habeas court that the dispositive "question in this case [is] whether the lack of a *Salamon* instruction was harmless error . . . ."

He claims that he was harmed by the lack of such an instruction. In support of that claim, the petitioner asserts that, even though Clarke had relinquished the items that he and Johnson demanded, "the continuing efforts to subdue [Clarke] for purposes of evading detection were part of the robbery itself . . . ." He further claims that "[i]t is undisputed that any alleged confinement occurred solely while [Clarke was being attacked]. There is nothing in the record to suggest that there was anything that could be characterized as confinement that occurred apart from the robbery of [Clarke] and the force incidental to attempting to gain control of [Clarke] to complete the robbery." In making that argument, the petitioner relies on this court's decision in *Banks* v. *Commissioner of Correction*, 184 Conn. App. 101, 194 A.3d 780 (2018), which, during the pendency of this appeal, was reversed by our Supreme Court. See *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 4–5.[7]

We must briefly set forth the factual background of *Banks*. In 1995, the petitioner in that case "was arrested and charged in connection with the armed robberies of two Bedding Barn stores, the first in Newington and the second in Southington." Id., 5. With respect to the Newington robbery, the petitioner pointed a gun at a store employee, and took money from the cash register and from the wallet of a second store employee, after which he moved both employees down a hallway and locked them in a bathroom. Id., 5–6. After the employees heard a bell indicating that the front door of the store had been opened, they kicked down the door and called 911. Id., 7. With respect to the Southington robbery, the petitioner, armed with a gun, demanded money from the cash register, and, once he obtained that money, he led the store employee and her roommate, who had been in the store, to a bathroom at gunpoint and told them to lock themselves inside. Id., 7–8. Again, after a buzzer went off indicating that the door to the store had been opened, the employee and her roommate left the bathroom and called 911. Id.

After the petitioner's convictions in *Banks* were upheld on direct appeal; *State* v. *Banks*, 59 Conn. App. 112, 113–14, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000); our Supreme Court decided *Salamon* in 2008. Subsequently, in 2014, the petitioner in *Banks* filed a petition for a writ of habeas corpus, claiming that his convictions of four counts of kidnapping violated his right to due process because the jury had not been instructed in accordance with *Salamon*. *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 13. The habeas court denied the habeas petition, and the petitioner, on the granting of certification, appealed to this court, which, in a divided panel, concluded that the absence of a jury instruction required by *Salamon* was not harmless beyond a reasonable doubt. *Banks* v. *Commissioner of Correction*, supra, 184 Conn. App.

104. We concluded that the petitioner was entitled to a new trial because a jury provided with a *Salamon* instruction reasonably could have found that the petitioner's movement and confinement of his victims was done in furtherance of the robberies. Id., 131. Following our decision, our Supreme Court granted the petition for certification to appeal filed by the respondent in *Banks*. *Banks* v. *Commissioner of Correction*, 330 Conn. 950, 197 A.3d 391 (2018).

On appeal, our Supreme Court decided two issues in *Banks* that impact our decision in the present case. First, the court established the standard of harmless error review applicable to habeas cases involving a *Salamon* error. *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 15. The court adopted the standard articulated in *Brecht* v. *Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), pursuant to which a new trial is necessary if the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict . . . ." (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 15.

Next, the court addressed the issue of whether "a properly instructed jury would have found the petitioner guilty of kidnapping beyond a reasonable doubt notwithstanding the *Salamon* error." Id., 34. In rejecting this court's conclusion that a jury reasonably might have found that the restraint and movement of the victims were undertaken as part of the ongoing robberies, the court stated: "This case is categorically distinct from all of our prior *Salamon* cases insofar as the petitioner indisputably had accomplished the criminal objective of his underlying crimes prior to the commencement of the alleged kidnapping. Under such circumstances, there simply is no concern that the intent of the legislature will be frustrated by prosecuting a defendant for kidnapping solely on the basis of the restraint inherent in or necessary to accomplish the underlying crime. Many if not most robbers choose to leave the scene immediately upon obtaining the fruits of their crime. Numerous sister state courts have concluded, as a matter of law, that a perpetrator's choice to remain at the crime scene and further restrict a victim's liberty after having robbed him or her manifests independent, criminal significance. . . . There is nothing specific to—let alone inherent in—the crime of robbery about forcing someone at gunpoint to the back of a store and restraining them in a bathroom or cooler. That conduct could just as well follow, and facilitate the offender's escape from, a physical or sexual assault, or other crime. The purpose is to escape unhindered from a crime scene—which, presumably, is a goal of most criminals—and the specific nature of the underlying crime is simply irrelevant." (Citations omitted.) Id., 39–41.

Moreover, the court in *Banks*, in addressing the fac-

tors set forth in *Salamon* for determining whether conduct has independent criminal significance, stated "that, in cases such as this, in which it is undisputed that the perpetrator unlawfully restrained his victims following, and to facilitate his escape from the location of, a robbery, the *Salamon* factors typically will tip against the petitioner's claim." Id., 42. After examining those factors in detail as applied to the facts of the case, the court in *Banks* concluded "that, when a perpetrator, having taken his victims' valuables, then leads them at gunpoint away from a highly visible commercial storefront and confines them in an isolated area of the store while he makes his escape, thereby exposing them to new and different risks, such conduct is not inherent in the nature of the robbery but, rather, indisputably has independent criminal significance." Id., 55–56.

Our decision in the present case is guided by our Supreme Court's decision in *Banks*. Here, the petitioner and Johnson already had taken the keys to Clarke's vehicle,

his laptop and credit card, and had made him disclose the personal identification number for the credit card, when they ordered him to get into his vehicle. Their conduct in pulling Clarke out of the building by his arms and pushing him into his car had nothing whatsoever to do with their robbery of his valuables, nor was it necessary for them to take Clarke's vehicle. As our Supreme Court in *Banks* explained: "The goal of a robbery is to take possession of another's property. Once that property has been taken by force, the purpose of leading the victims to a different, more isolated location and requiring that they remain there for some period of time is, undoubtedly, to facilitate the offender's escape from the premises, undetected and unobstructed." Id., 44. The petitioner's statement to the police regarding the New Britain case, which was dated October 25, 1999, and which had been admitted into evidence at the habeas trial, demonstrated that the petitioner's plan was to steal Clarke's car and to force him to come along so that Clarke could not call the police and identify the perpetrators. The restraint and movement of Clarke, therefore, were done to facilitate the petitioner's escape from the scene of the robbery, not to accomplish the robbery itself. As such, this conduct had independent criminal significance. Moreover, even though the facts of the present case differ slightly from those in *Banks*, both cases involve a situation in which a "perpetrator removes [a victim] from the scene of [a] robbery and restrains [the victim] after having forcibly taken [the victim's] property . . . ." Id. We therefore are not persuaded by the petitioner's attempt to distinguish *Banks* from the present case.

Accordingly, we conclude, on the basis of the reasoning in *Banks*, that the habeas court properly determined that the absence of a *Salamon* instruction at the peti-

tioner's criminal trial in the New Britain case constituted harmless error. The habeas court, after thoroughly addressing each of the *Salamon* factors as applied to the facts of the present case, made factual findings in connection therewith, which were not clearly erroneous, and its determination that those factors did not favor the petitioner was supported by the record. The absence of a *Salamon* instruction, thus, could not have substantially affected or influenced the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, the petitioner was convicted of capital felony in violation of General Statutes (Rev. to 1999) §§ 53a-54b (5) and 53a-8 (a), murder in violation of General Statutes (Rev. to 1999) §§ 53a-54a (a) and 53a-8 (a), felony murder in violation of General Statutes § 53a-54c, kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8 (a), robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), robbery in the second degree in violation of General Statutes § 53a-135 (a) (1), larceny in the first degree in violation of General Statutes (Rev. to 1999) §§ 53a-122 (a) (3) and 53a-8 (a), conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-92 (a) (2) (B), and larceny in the fourth degree in violation of General Statutes (Rev. to 1999) § 53a-125 (a).

[2] In addition to the kidnapping and robbery offenses, the petitioner also was convicted of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and (2), attempt to commit murder in violation of General Statutes (Rev. to 1999) §§ 53a-54a and 53a-49, assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (1) and (2), conspiracy to commit kidnapping in the first degree with a firearm in violation of §§ 53a-48 and 53a-92a, conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101, conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1), larceny in the first degree in violation of General Statutes (Rev. to 1999) § 53a-122 (a) (3), and conspiracy to commit larceny in the first degree in violation of General Statutes (Rev. to 1999) §§ 53a-122 (a) (3) and 53a-48.

[3] This court agreed with a double jeopardy claim raised by the petitioner that the trial court improperly had sentenced him on his conviction of six counts of conspiracy offenses, and we remanded the case with direction to merge the petitioner's conviction of the six conspiracy offenses and to vacate the sentences for five of them. *State* v. *Coltherst*, supra, 87 Conn. App. 96, 113.

[4] In light of our conclusion that the petitioner has failed to establish deficient performance by Attorney O'Brien, we need not address the prejudice prong of the *Strickland* test. See *Fair* v. *Commissioner of Correction*, 205 Conn. App. 282, 294, 256 A.3d 163 (2021) ("[i]n its analysis, a reviewing court may look to the performance prong or to the prejudice prong [of the *Strickland* test], and the petitioner's failure to prove either is fatal to a habeas petition" (internal quotation marks omitted)).

[5] At oral argument before this court, the petitioner's counsel acknowledged the difficulty in pursuing this claim on appeal given the sparse record. He also recognized the petitioner's ambivalence regarding whether he would have accepted the plea agreement.

[6] See footnote 4 of this opinion.

[7] On May 17, 2021, the state filed a notice of supplemental authority, pursuant to Practice Book § 67-10, advising this court of the release of our Supreme Court's decision in *Banks* on May 12, 2021, and its applicability to the present case.

At oral argument before this court, the petitioner's counsel argued that our Supreme Court's decision in *Banks* was not dispositive of this claim on appeal, and he attempted to distinguish *Banks* on the ground that the facts of the present case were not as conclusive as those in *Banks*, in which store employees were locked in a bathroom.